## DAVIS & BRANDON *v.* ELLIOTT.

1. This was an action of ejectment in the fictitious form. The real plaintiff filed an amendment in which she alleges the facts which she contends entitled her to recover, so far as to subject the land in question to the payment of her debt secured by a deed made by the owner of

Ejectment, 19 C. J. p. 1178, n. 30.
New Trial, 29 Cyc. p. 1020, n. 20.
Pleading, 31 Cyc. p. 746, n. 26.
Taxation, 37 Cyc. p. 1342, n. 18; p. 1520, n. 72.
Trial, 38 Cyc. p. 1663, n. 22.

the land, under whom she claims. To this petition as amended the defendants demurred. The demurrer was overruled. To the judgment overruling the demurrer there was no timely exception. The plaintiff having proved her case as laid, she was entitled to recover.

2. Where a tax fi. fa., including costs, amounting to approximately $200, was levied upon a tract of land consisting of 114 acres, which the evidence shows was worth from $1000 to $2500, and that the land levied upon was capable of subdivision into separate lots of sufficient value to satisfy the tax execution, the jury was authorized to find that the sale of the entire tract of land under the tax execution was excessive, and the sheriff's deed executed in pursuance thereof is void.

3. The court charged the jury: "This is a suit in ejectment (I am not going to undertake to charge you about this fictitious business, as that might get you all mixed up about it), brought by Mrs. Meta H. Elliott (she is the real party) against J. S. N. Davis and G. W. Brandon, and for mesne profits, that is to say, the value that they, defendants, received from it, and they attack the defendants' claim. The plaintiff claims her right under a deed to secure debt which has not been canceled or satisfied, and they claim the right to recover under that deed." The above charge is not open to the objection that it is contrary to law, in that it expresses the opinion that the plaintiff is the holder of the legal title.

4. Ground 6 of the motion for new trial alleges error because the court charged the jury that "It is the duty of the levying officer, when he is levying [for] tax sales, to levy on just such an amount as would be ordinarily reasonably sufficient to satisfy his execution. If he levies on an amount in excess, or grossly in excess of that, that would make his levy voidable at the instance of any party at interest; any person holding a claim or debt against it would have the right to attack it in that regard." Under the facts of this case the above charge is not error for the reason assigned, that under the law only the holder of the legal title and his privies in estate could attack the tax deed for that reason. The cases of *McArthur* v. *Peacock*, 93 *Ga.* 715 (20 S. E. 215), and *Morris* v. *Rogers*, 104 *Ga.* 705 (3) (30 S. E. 937), are not applicable to the facts of this case. The above ruling applies also to ground 7 of the motion for new trial.

5. The brief for plaintiffs in error recites that plaintiff has written off the sum of $400 damages recovered as mesne profits, and that ground 8 of the motion for new trial is abandoned. This ground therefore will not be considered by this court.

6. Other grounds of the motion for new trial are without merit.

7. The evidence authorized the verdict, and the judge did not err in overruling the motion for a new trial.

No. 5389. NOVEMBER 15, 1926.

Ejectment. Before Judge Sheppard. McIntosh superior court. March 23, 1926.

Mrs. Meta H. Elliott brought ejectment against J. S. N. Davis and G. W. Brandon, doing business under the firm name of Davis & Brandon, as tenants in possession, for the recovery of a certain

tract of land. The suit was filed November 12, 1923, and on April 25, 1925, a supplemental petition in the nature of an amendment was filed and allowed by the court. To the petition as amended the defendants filed their demurrer, which was overruled by the court on May 26, 1925, but no exception pendente lite was filed to the overruling of the demurrer. On the trial of the case both plaintiff and defendant introduced evidence; and after the court had charged the jury, they returned a verdict in favor of the plaintiff. A motion for new trial was overruled, and the defendants excepted.

The plaintiff claims title under the following facts as alleged in the petition as amended: On May 16, 1887, William L. Gignilliat and John Heyward executed and delivered to Wm. D. Harden a deed conveying the land described in the petition. The deed was executed for the purpose of securing a debt due to William D. Harden by Gignilliat and Heyward and represented by their note dated May 16, 1887, due three years after date, with interest at 8 per cent. per annum. From time to time Harden extended the time for the payment of the note prior to the time of his death. He died testate on January 11, 1898, appointing his son, Alfred D. Harden, executor of his will, in which he left his property to his widow and two children, Mrs. Meta H. Elliott and Alfred D. Harden. In the division of his property in accordance with the terms of the will, the deed to secure the aforementioned debt and the title to the land securing the debt, and the title to the land described in the petition, passed to Alfred D. Harden. On May 23, 1908, Alfred D. Harden sold, transferred, and assigned to Mrs. Meta H. Elliott, the plaintiff, *the indebtedness* secured by the security deed, but did not convey to her the legal title to the land. On January 7, 1910, Alfred D. Harden died, leaving as his heirs at law his widow, Laura A., now Mrs. Platt Gibbs, Mary A. Harden, now Mrs. F. A. Goldsmith, Margaret P. Harden, and William D. Harden, plaintiff's lessor, who inherited the legal title to the land described in the petition from William D. Harden. William L. Gignilliat and John A. Heyward had failed to pay the principal indebtedness and interest secured by the security deed, and there remained an indebtedness of $1455, with interest from October 1, 1909, at 8 per cent. per annum, which was due to Mrs. Meta H. Elliott, under the assignment from Alfred D. Harden. William

L. Gignilliat and John A. Heyward covenanted and agreed, in the deed to secure the debt to William D. Harden, to pay all taxes. On March 6, 1919, there was, unknown to plaintiff, recorded in book of deeds P, p. 477, in the clerk's office of McIntosh County, Georgia, an instrument signed by Samuel J. Hagan, sheriff, purporting to convey to A. H. and John Manson the land described in the declaration, "in as ample a manner as the same was held and possessed by the said W. L. Gignilliat when said property was levied upon and sold." On January 20, 1923, there was recorded in deed book S, p. 317, a deed from John and A. H. Manson, purporting to convey to Davis & Brandon, the defendants, the land described in the petition. The legal title to the land in controversy is held by the lessors of the plaintiff, but is held for the special purpose only of securing the indebtedness of William L. Gignilliat and John A. Heyward to Mrs. Meta H. Elliott. Plaintiff prays that the legal title to the lands in controversy be found to be in the plaintiff, but that it is held as security for the indebtedness of William L. Gignilliat and John A. Heyward, and that the amount due be ascertained and declared; that the court adjudge and decree that the land be sold and the proceeds be applied, first, to the payment of the costs of this proceeding and the sale; then to the payment to Mrs. Meta H. Elliott of the indebtedness due by William L. Gignilliat and John A. Heyward, both principal and interest; the remainder, if any, to be paid to Davis & Brandon or their order; that in the event the sale of said land does not bring an amount sufficient to pay the principal and interest due on the note executed by Gignilliat and Heyward (that is, to cover all the indebtedness due Mrs. Elliott), the plaintiff recover of Davis & Brandon $2,000 as mesne profits, or such fraction thereof as may be necessary to pay the indebtedness in full.

The possession of the property remained in the grantor. On January 2, 1918, by virtue of a fi. fa. issued against the grantor for his State and county taxes for the year 1916, the sheriff levied upon, advertised, and sold the property on March 5, 1918; the sheriff having also an execution for the taxes due for the year 1917. The execution in the hands of the sheriff, together with the costs, amounted to approximately $200. At the sheriff's sale the property was bid in by John and A. H. Manson, for $500, and the difference of approximately $300 was paid to William L. Gignilliat.

On January 10, 1923, John and A. H. Manson conveyed the property to Davis & Brandon.

*Tyson & Tyson,* for plaintiffs in error.

*W. B. Stubbs* and *Livingston McLaws,* contra.

HILL, J. (After stating the foregoing facts.)

1. Upon the overruling of the demurrer to the petition as amended, which judgment was not excepted to in time, the petition stood as setting out a cause of action, the court holding, in effect, that the petitioner alleged a good title to the land. She alleged that Alfred D. Harden sold, transferred, and assigned to Mrs. Meta H. Elliott, the plaintiff in this case, the indebtedness secured by the security deed, but that Alfred D. Harden did not convey to Mrs. Elliott the legal title to the land; that the widow and children of Alfred D. Harden, he being dead, who inherited the legal title to the land in controversy, hold the title to the land for the special purpose only of securing the indebtedness of William L. Gignilliat and John A. Heyward to Mrs. Meta H. Elliott. She proved her case as laid, and was entitled to recover. *Brooks* v. *Rawlings,* 138 *Ga.* 310 (75 S. E. 157). She also connected herself up with the legal title by showing that the persons holding the legal title held it for the benefit of the transferee, and she therefore had an equity in the property. In the case of *Clark* v. *Havard,* 122 *Ga.* 273 (50 S. E. 108), Mr. Justice Cobb said: "The grantee in a security deed may sue the debt to judgment and cause the land to be levied upon and sold after a reconveyance to the debtor, or he may bring an action to recover possession of the land upon the title derived from the security deed. He may pursue these remedies concurrently, and neither is an obstacle in the way of the other until the debt has been fully satisfied under the operation of one or the other proceeding. *Ray* v. *Pitman,* 119 *Ga.* 678, 681 [46 S. E. 849], and cit. A transfer of the debt by the grantee does not, in the absence of a conveyance, pass to the transferee title to the land. *Sheppard* v. *Reese,* 114 *Ga.* 411 (2) [40 S. E. 282]. But as a result of such transfer the transferee acquires an equitable interest in the security effectuated by the deed. *Van Pelt* v. *Hurt,* 97 *Ga.* 660 (2) [25 S. E. 489]. After the debt has been transferred the grantee in the security deed holds the title for the benefit of the transferee. *Shumate* v. *McLendon,* 120 *Ga.* 397 (10) [48 S. E. 10]. The transferee may proceed to collect the debt by

obtaining judgment and causing a levy to be made on the land after a reconveyance by the grantee; or he may in equity accomplish the same result by a proceeding against the debtor and the grantee, and in such a proceeding he may obtain a decree providing for a sale of the land and the payment of the debt, or for a recovery of the possession of the land, to be held for the same purpose and to the same extent as the grantee could have recovered it if he had not transferred the debt. At law the transferee is the owner of the debt, but not the owner of the land. In equity he is the owner both of the land and the debt. If a court of equity has taken jurisdiction at the instance of the transferee, for the purpose of allowing him to assert his equitable title to the land, he may make such parties and ask such decree as may be necessary and proper to make the assertion of his equitable right complete. Hence, if there are third persons asserting title which can not be legally or equitably asserted as against the transferee, and such parties are colluding for the purpose of delaying and hindering him in the pursuit of the remedies which equity will afford him to obtain satisfaction of his debt, a petition making these persons parties and setting forth sufficient facts to enable the court to render a decree which would make effective the assertion of the plaintiff's right to the land would not be multifarious. *Conley* v. *Buck,* 100 *Ga.* 187 [28 S. E. 97]; *Ernest* v. *Merritt,* 107 *Ga.* 61 [32 S. E. 898]. Applying these principles to the case under consideration, it is clear that the plaintiff did not have legal title to the land, but did, by the transfer of the debt, obtain an equitable interest in the security, and therefore such an equitable title to the land as was necessary to enable her to assert her equitable interest in the land." See Powell on Actions for Land, 528.

2. Another question is, is the sheriff's levy of the tax execution upon the land in controversy excessive and void, and the sale thereunder a nullity? The jury rendered a verdict that the levy was excessive, and found for the plaintiff the sum of $400 damages; the amount of the damages being subsequently written off by the defendant in error; and ground 8 of the motion for new trial is therefore expressly abandoned. Was the jury authorized to find that the levy was excessive? William L. Gignilliat testified as follows: "Woodville is a desirable property for residential purposes, on account of its location, being on a salt-water creek. It

was my old home place, and has an avenue leading to the public road, and is accessible to the county site. The residence was burned a number of years ago; it was destroyed by fire several years before the sheriff's sale of the property for taxes. The property sold by the sheriff for taxes was capable of division into several tracts, any one of which would have brought the amount due by me for taxes, which was approximately $200. The entire tract was sold and brought $500 at the tax sale. I got the difference of approximately $300, being the overplus that the sheriff had after the payment of the taxes due by me, and what the property brought at the sale. The levy upon 100 acres for a tax of about $200 was excessive. I have had considerable experience in dealing in land in McIntosh and neighboring counties. In 1916 land of the character of the land now in dispute, with frontage on salt water, was worth $25 an acre; in 1919 it was worth about the same; to-day I consider its value about the same, $25 an acre. The difference in the value of the land, due to cutting timber, etc., is $500 to $1000, and the spring on the place, which supplied it with water, has been choked up. I was in possession of the land in dispute at the time the deed to secure debt to Judge Harden was made, and have been in continuous possession ever since, including the time of levy and sale under the tax fi. fa. I knew the family of Judge Harden. He had only two children, one son named Alfred, and one daughter named Meta. The land in dispute, now called 'Woodville,' was originally two separate tracts, one the summer house of my grandfather, the other of my great-uncle. These separate tracts had separate residences and other buildings on them." There being evidence to the effect that the sheriff's levy on the land in controversy, to satisfy the tax execution, was excessive, we are of the opinion that the verdict on that question was authorized. Under the Civil Code (1910), § 6032, it is provided that "Courts have full power over their officers making execution sales; whenever satisfied that a sale made under process is infected with fraud, irregularity, or error to the injury of either party, the sale will be set aside." The evidence in the instant case shows that the tax fi. fa. and cost amounted to approximately $200, and that the value of the land levied upon was variously estimated at from $1000 to $2500. It was also in evidence that the tract of land was capable of subdivision into separate tracts, each of which would be of suf-

ficient value to satisfy the execution. In these circumstances the jury was authorized to find that the levy upon the entire tract was excessive, and the sale void. *Stark* v. *Cumming,* 127 *Ga.* 107 (2) (56 S. E. 130), and cit. The sheriff's deed being void, the plaintiff having the right as a party at interest under the security deed to sue in ejectment, there being evidence to support the verdict, and the trial judge being satisfied therewith, this court can not for any reason assigned reverse his judgment refusing a new trial.

Other headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

BECK, P. J., and GILBERT, J. We are of the opinion that the ruling in the first headnote is sound, and under that ruling the plaintiff was entitled to recover. We therefore concur in the judgment of affirmance.