18655. MASSELL *v.* FOURTH NATIONAL BANK OF MACON.

DECIDED AUGUST 31, 1928. REHEARING DENIED SEPTEMBER 28, 1928.

*Alston, Alston, Foster & Moise, Albert E. Mayer,* for plaintiff in error.

*Hall, Grice & Bloch, Spalding, MacDougald & Sibley,* contra.

BELL, J. Fourth National Bank of Macon brought suit against Ben J. Massell, as acceptor, for the recovery of the aggregate amount of $15,112.78, principal, upon a number of trade acceptances drawn in the latter part of 1926 by Pynetree Paper Company, payable to the order of itself and accepted by the defendant. Each of the acceptances bore the following as the signature of the drawer and was indorsed by this company as payee in the same manner: "Pynetree Paper Company, by A. F. Medlin, Asst. Mgr." The defendant filed pleas which the court struck on general demurrer, and after judgment in favor of the plaintiff the defendant excepted.

The defendant in his answer alleged substantially the following facts by way of defense: (1) None of the indorsements as shown upon the trade acceptances were "the valid indorsements of the Pynetree Paper Company, for the reason that said indorsements were made by A. F. Medlin, assistant manager, and the said Medlin had no valid corporate authority to indorse said trade acceptances for Pynetree Paper Company, and this defendant is informed and believes and therefore denies that the acts of the said A. F. Medlin have ever been ratified by said corporation." (2) The plaintiff, Fourth National Bank of Macon, took the acceptances, provided there were valid indorsements of the same, with knowledge that they were secured by a loan deed conveying certain described real estate to the Pynetree Paper Company, as payee, and the bank neither took a transfer of this loan deed nor was in a position to secure or enforce the cancellation thereof upon the payment of the acceptances by the defendant. Pynetree Paper Company had been adjudicated a bankrupt, and the bank had filed its petition in the bankruptcy proceedings for the purpose of obtaining from the trustee in bankruptcy a transfer to the plaintiff of the property conveyed by such loan deed; but the bank had not been successful in these efforts, and the petition for that purpose was still pending. (3) The plaintiff made a contract with the defendant that if the acceptances were paid, it would cause a cancellation of the loan deed. Copies of the letters comprising this alleged contract were

attached to the defendant's answer. It was alleged that the bank "was not and has never been in position to comply with this contract to cancel said loan deed upon payment of this indebtedness." The defendant had entered into a contract with a third person for the sale of the real estate so conveyed to secure the acceptances sued on, and because "defendant was unable to secure cancellation of the loan deeds as hereinbefore set out, this defendant has been injured and damaged in the sum of $15,000; . . said defense is good as against these acceptances without regard to whether the trustee of Pynetree Paper Company or the plaintiff in this cause is the legal holder of said notes and entitled to the proceeds arising from the collection thereof." (4) "This defendant denies that the plaintiff is an innocent purchaser for value before maturity of these notes, for the reason that, upon information and belief, this defendant alleges that the plaintiff acquired said notes as a preference within four months of the bankruptcy of Pynetree Paper Company Inc., and this defendant alleges, upon information and belief, that the duly constituted and elected trustee of Pynetree Paper Company Inc. claims that as such trustee he is entitled to have and recover said acceptances from said plaintiff by reason that it was a preferential transfer under the existing bankruptcy acts."

■ The allegations of the plea were insufficient to raise any question as to the validity or sufficiency of the indorsements of the acceptances. The title of the holder of a note may be inquired into where it is necessary for the protection of the defendant, or to let in any defense which he seeks to make. Civil Code (1910), § 4290. But an indorsement or assignment of a negotiable instrument, when sued on by the indorsee, need not be proved unless denied on oath. Civil Code (1910), § 4299. In the present case the defendant does not deny that A. F. Medlin was assistant manager of Pynetree Paper Company and that he, in this capacity, executed the indorsements for and in behalf of that company. Merely to deny that he had authority so to act for his principal, without averring that the plaintiff took the paper with knowledge of such want of authority on his part, was not a denial of the indorsements within the meaning of the code. Under section 62 of the negotiable instruments act (Ga. L. 1924, p. 126), the acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance, and admits the existence of the drawer, the genuineness

of his signature, and his capacity and authority to draw the instrument. Thus, in the present case the defendant admitted the genuineness of the signature affixed to the acceptances by Pynetree Paper Company as drawer. From this fact, considered in connection with the implications of authority arising from the title of assistant manager, and in the absence of anything to the contrary, it certainly should be presumed that Medlin had authority also to act for his company in indorsing the paper. Every corporation acts through its officers, and is responsible for the acts of such officers in the sphere of their appropriate duties; and no corporation shall be relieved of its liability to third persons for the acts of its officers by reason of any by-law or other limitation upon the power of the officer, not known to such third person. Civil Code (1910), § 2225. Medlin having apparent authority as assistant manager to execute the indorsements, even the corporation represented by him could not have defeated such indorsements merely by alleging that in truth and in fact he had no such authority and that his act in indorsing the paper had not been ratified. Much less could the indorsement be defeated by a third person (as in this case the defendant acceptor) by allegations which altogether fail to charge the plaintiff with notice of such lack of authority in the agent. See, in this connection, *Louisville & Nashville R. Co.* v. *Tift,* 100 *Ga.* 86 (27 S. E. 765); *Tyson* v. *Bray,* 117 *Ga.* 689 (2) (45 S. E. 74); *Stubbs* v. *Fourth National Bank,* 12 *Ga. App.* 539 (5) (77 S. E. 893); *Dawson Paper Shell Pecan Co.* v. *Montezuma Fertilizer Co.,* 19 *Ga. App.* 42 (2) (90 S. E. 984); *Bussell* v. *Dannenberg Co.,* 34 *Ga. App.* 792 (132 S. E. 230); *LaGrange Lumber &c. Co.* v. *Farmers & Traders Bank,* 37 *Ga. App.* 409 (3) (140 S. E. 766); *Edwards* v. *Camp,* 29 *Ga. App.* 556 (2) (116 S. E. 210); Civil Code (1910), § 3595; 14 C. J. 372, 459; *Turner* v. *Clarke,* 143 *Ga.* 44 (3) (84 S. E. 116).

The instant case should be distinguished from the cases of *Bruce* v. *Neal Bank,* 134 *Ga.* 364 (67 S. E. 819), *Carter* v. *Haralson,* 146 *Ga.* 282 (91 S. E. 88), and *Federal Discount Co.* v. *Carter,* 14 *Ga. App.* 645 (82 S. E. 51). In each of those cases there was a denial on oath of the genuineness of the indorsement, and this was to charge in effect that the indorsement was a forgery. See Civil Code (1910), § 4286; section 23 of the negotiable instruments act, supra.

Whether, if the plea had contained a further allegation to the effect that the plaintiff took with knowledge of the lack of authority of the agent to make the indorsements, this would have rendered the plea good, is a question that need not be decided, and that is not decided, in this case. *Johnson* v. *Waxelbaum Co.,* 1 *Ga. App.* 511 (58 S. E. 56).

■ The fact that the land deeded to the original payee to secure the acceptances was not conveyed to the plaintiff along with the indorsements of the acceptances was no reason why the plaintiff should not recover. *Clark* v. *Havard,* 122 *Ga.* 273 (50 S. E. 108); *Pape* v. *Woolford Realty Co.,* 35 *Ga. App.* 284 (4) (134 S. E. 174). While a transfer of the debt by the grantee in the deed did not, in the absence of a conveyance, pass to the transferee the legal title to the land, such transfer of the debt operated to vest in the transferee an equitable interest in the security, and the grantee in such deed thereafter held title to the land for the benefit of the transferee. *Davis* v. *Elliott,* 163 *Ga.* 169 (135 S. E. 731); *First National Bank* v. *Pounds,* 163 *Ga.* 551 (2) (136 S. E. 528). Whatever obligation may have rested upon the grantee to reconvey the land or to effectuate a cancellation of the deed upon the payment of the debt, the record discloses no assumption of such obligation by the plaintiff transferee. The acceptances upon which the defendant became bound contained no provision making such reconveyance or cancellation by an indorsee a condition precedent to the right to enforce payment. *Jeanes* v. *Atlanta & Lowry National Bank,* 34 *Ga. App.* 568 (130 S. E. 353). Furthermore, upon payment of the debt defendant will have his remedy, regardless of the position or attitude either of the plaintiff or of the grantee in the security deed. *Williams* v. *Foy Mfg. Co.,* 111 *Ga.* 856 (36 S. E. 927); *Shumate* v. *McLendon,* 120 *Ga.* 396 (48 S. E. 10); Civil Code (1910), §§ 3309, 3310.

In *Citizens Mercantile Co.* v. *Easom,* 158 *Ga.* 604 (123 S. E. 883), there was presented to the Supreme Court the question whether "the payment of a debt secured by deed put title to the land therein embraced back into the grantor, so that it can be levied on under an execution issued on a judgment junior in date to such deed, without a formal reconveyance of such land by the grantor to the grantee in such security deed." The court, speaking through Mr. Justice Hines, held that payment of the debt vested

in the grantor a perfect title to the land, and in discussing the question said: "The full payment of the purchase-money of land, accompanied with possession, gives to the purchaser a legal title. Full payment of the purchase-money invests the purchaser with legal title, and not a mere equitable title. A perfect equity is, in this State, a good title even at law, and is sufficient to support or defeat ejectment. *Pitts* v. *McWhorter,* 3 *Ga.* 5 (46 Am. D. 405); *Peterson* v. *Orr,* 12 *Ga.* 464 (58 Am. D. 484); *May* v. *Sorrell,* 153 *Ga.* 47, 52 (111 S. E. 810); *Elrod* v. *Bagley,* 154 *Ga.* 670 (115 S. E. 3). It logically follows that full payment of the secured debt revests in the grantor the title to the property therein conveyed; and this being so, the grantor in such deed, after such full payment of the secured debt, has a leviable interest in the land therein embraced. We are aware that this court has held that 'the doctrine of perfect equity as the equivalent of legal title is, so far as we know, restricted to the relation of vendor and purchaser' (*Howell* v. *Ellsberry,* 79 *Ga.* 475, 5 S. E. 96); but in that and in similar cases this court was dealing with the equities of donees and persons occupying similar relations. The relation of grantor and grantee in a security deed is so near of kin to that of vendor and purchaser that the doctrine of a perfect equity being equivalent to a legal title should be applied."

So, in the present case, we think the defendant's allegations as to the condition of the title to the property which he had conveyed to secure the debt were insufficient to disclose any defense in his favor.

■ The letters referred to in paragraph 3 of the above statement were as follows:

"December 18, 1926.

"Fourth National Bank, Macon, Ga.

"Attention Mr. Charles B. Lewis, President.

"Dear Mr. Lewis: I am arranging to refinance the credit extension of $15,000 which you hold in trade acceptances from the Pynetree Paper Company. It will be necessary, when these items are paid, to release the collateral which you hold in the form of a loan deed on the Buena Vista farm, and I request that you have all papers ready so that when these items are paid, the Pynetree Paper Company, through the proper officials, as well as the Fourth National Bank, shall quit-claim the property to me." [Signed by the defendant.]

"Macon, Georgia, December 27, 1926.

"Mr. Ben J. Massell, 43½ Peachtree St., Atlanta, Ga.

"Dear Mr. Massell: With reference to your favor of December 18th, beg to advise that we are now in position to deliver to you the cancelled loan deed on the Buena Vista farm, upon payment of the $15,000 held by us in trade acceptances from the Pynetree Paper Company." [Signed for the bank.]

Regardless of whether there may be other infirmities in the defense sought to be made in view of these letters, the agreement alleged to have resulted from such communications was a nudum pactum, and thus constituted no legal basis for a claim of damages put forward as for a breach of contract. Civil Code (1910), § 4241.

■ That the plaintiff may have acquired the acceptances as a preference within four months prior to the bankruptcy of the indorser, Pynetree Paper Company, was of no concern to the defendant acceptor, under the facts appearing. If the title of the plaintiff could be defeated at all upon the ground stated, the trustee in bankruptcy, and not the defendant, was the proper person to raise the question. *Tyson* v. *Bray*, 117 *Ga.* 689 (2) (45 S. E. 74); *Gray* v. *Oglesby*, 9 *Ga. App.* 356 (71 S. E. 605); Thompson *v.* Franklin National Bank, 45 App. Cases (D. C.), 218; 8 Cyc. 43 (b); 20 Cyc. 625.

Section 51 of the negotiable instruments act provides that the holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument. If the plaintiff held the note in fraud of the other creditors of Pynetree Paper Company, it did not hold it in fraud of the defendant, who was not a creditor, but a debtor, of this company, and assuming that the allegations here considered show a right against the plaintiff in favor of some other person, the right is not one inuring to the benefit of the defendant, and hence can not be claimed by him as a defense.

The defendant's answer failed to set forth any valid defense, and the general demurrer thereto was properly sustained.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

### ON MOTION FOR REHEARING.

BELL, J. The motion for rehearing is aimed at the ruling in the first headnote and in the corresponding division of the opinion. It is apparent that counsel for movant, the plaintiff in error,

have construed our decision as holding that the authority of Medlin as assistant manager, to indorse the instruments in behalf of the corporation, should be inferred from the mere fact that he had drawn them in the first instance, the defendant by acceptance being committed to his authority to draw them. It is urged "that where an agent or officer of a corporation is authorized to draw a draft, this does not give such agent or officer authority, after the draft has been drawn, to indorse the same for the corporation," and that in our decision as above rendered we have ruled to the contrary of this principle, overlooking certain English cases, as well as certain decisions by the Supreme Court of Georgia, to be mentioned hereinafter.

It was not in the mind of this court to rule that the authority of the agent to indorse the instruments should be presumed merely from the fact that he had drawn them and obtained their acceptance by the defendant. We thought, however, that the admitted authority of the agent to perform the latter function amounted to some evidence of authority to negotiate the paper by indorsement, and that this fact might be considered in connection with the further fact that the person indorsing the paper held the office of assistant manager of the corporation, concluding that in these circumstances, and in the absence of anything to the contrary, it should be presumed that the agent had authority to indorse. But assuming now that authority to draw was absolutely no evidence of authority to indorse, we are still of the opinion that the defendant's answer failed to make any issue as to the plaintiff's title to the paper sued on. From the cases cited in our original opinion (and see further, in this connection, *Raleigh & Gaston R. Co.* v. *Pullman Co.*, 122 *Ga.* 700 (7), 50 S. E. 1008), we think that where a person holds the office of assistant manager of an ordinary commercial corporation and in that capacity indorses and delivers to another person in behalf of his company negotiable paper belonging to it, it should, in the absence of anything to the contrary, be presumed that in so doing he was acting within the scope of his authority.

In the present case it appears, both from the petition and the answer, that the plaintiff was in possession of the paper sued on, holding the same under the indorsement referred to above; and by section 16 of the negotiable instruments act it is provided that

"where the instrument is no longer in possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." Ga. L. 1924, p. 130. Compare 3 R. C. L. 980, 981.

In a suit upon a negotiable instrument held by the plaintiff under an indorsement by an agent of the payee, it is not necessary that the agent's authority should appear upon the note or that it should be alleged in the petition. Garrison v. Combs, 7 J. J. Marshall (Ky.), 84 (22 Am. D. 120) ; Bettis v. Bristol, 56 Iowa, 41 ; Northwestern Savings Bank v. International Bank, 90 Mo. App. 205. It would seem to follow that any lack of authority in the agent to indorse would be a matter of defense, and, not only this, but that where, as here, the person indorsing the paper did so in his official character as assistant manager of the payee corporation, the onus would also be upon the defendant to show the limitation upon the authority of such agent so to act in the premises, with knowledge of that fact by the person holding and claiming by virtue of such indorsement.

According to section 21 of the negotiable instruments act, a signature by procuration operates as a notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent so signing acted within the actual limits of his authority. The question here, however, is in relation to the apparent authority of a particular officer of a corporation, and is not in reference to a signature by procuration. 3 Bouvier's Law Dictionary, 2558, 2732 ; 6 Words & Phrases, 5662. With further reference to the applicability of this provision in a case of this sort, see Bennett v. Potashnick, 214 Mo. App. 507 (257 S. W. 836).

Coming now to the cases referred to in the motion for rehearing, we will notice first the case of Robinson v. Yarrow, 7 Taunt. (Eng.) 455. In that case, after the dissolution of the partnership of C. Staeben & Company, one of the former partners, A. Henry, drew a bill on the defendant, payable to the order of the partnership, and signed the same "P. pro C. Staeben and Co., A. Henry," the phrase "p. pro" meaning per or by procuration. The paper was subsequently indorsed to the plaintiff in like manner, and, in the suit against the defendant who had accepted the bill, the question was as to the authority of the former partner to execute the indorsement. It was held that while the defendant in accepting the bill

admitted the authority of the former partner to draw it, this, without more, did not establish his right to indorse or negotiate it. That case is clearly distinguishable from the one now under consideration, because there the person indorsing the paper had no actual or implied authority to do so merely in virtue of his previous relationship as a partner. In the present case we have the continuing relationship of an assistant manager, from which office some power is to be implied.

In Beemer v. Duck, 11 M. & W. (Eng.) 251, the drawing and the indorsement were both forgeries. It was said, as an intimation or semble, "that where the name of a real party, as the drawer, is forged, a party who accepts the bill in ignorance of the forgery is estopped to deny the drawing only, but not the indorsement, although in the same handwriting." That case is unlike the present in that here neither the drawing nor the indorsement was a forgery, but the question is in relation to the authority of a designated officer of the payee corporation.

Our decision in the instant case in no wise conflicts with the ruling of the Supreme Court in *Exchange Bank* v. *Thrower*, 118 *Ga.* 433 (45 S. E. 316). In that case the agent whose authority was in question was merely the cashier of a State manager of an insurance company, and it was held that the fact that he was authorized to indorse, for deposit, checks in behalf of the manager did not empower him to indorse checks and drafts in blank so as to collect the money thereon.

In *Dobbins* v. *Etowah Mfg. Co.*, 75 *Ga.* 238, the action was between the original parties, and no question as to the right of the holder of negotiable paper by indorsement was involved. The notes were signed by one as general superintendent of the defendant corporation, and in doing so he was acting under specific authority known to the payee. In the opinion the Supreme Court said: "In this case, it will not avail the plaintiff that the company held out this party as an agent to bind it in this manner, for he knew, or is presumed to have known, its powers under the charter, and he swore that he had seen the paper under which this agent acted before he would advance money for the company. That he was mistaken as to the authority of the agent and the extent of his power to bind his principal, and that he parted with his money under the mistaken belief that he was dealing with the corporation,

and that it would thereby and in that manner become bound to him as its creditor, may, perhaps, be probable, but this belief, without more, would not render it liable on these notes, especially where it was shown that it took no part in misleading him."

In *Union Savings Bank* v. *Ellis*, 110 *Ga.* 495 (35 S. E. 780), it was contended by the defendants that the plaintiff, as holder by indorsement, got possession of the note sued on through one Nelligan as its officer, with full knowledge of the defenses asserted. The evidence tended to show knowledge of such defenses by Nelligan, and the question as raised in the Supreme Court was, whether there was any evidence that Nelligan "was an official of the bank charged with the duty of discounting papers," so that notice to him was notice to the bank. The only evidence of his agency or official character was the testimony of one of the defendants that he was "the accountant and general manager of the Union Savings Bank." The Supreme Court said that this office in relation to a bank was an anomalous one, and, in effect, held that "so uncommon a bank official" had no implied power, merely in virtue of his office, to discount paper in behalf of the bank. In the instant case the officer who negotiated the paper sued on was assistant manager of an ordinary business corporation, and this was no anomalous or uncommon office such as was dealt with in relation to a bank, in the *Ellis* case.

We are thus of the opinion that each of the cases cited in the motion for rehearing is to be distinguished from the case at bar, and our conclusion is that the motion for rehearing should be denied.

*Rehearing denied. Jenkins, P. J., and Stephens, J., concur.*