## 75004. BANK SOUTH, N.A. v. MIDSTATES GROUP, INC.
(364 SE2d 58)

CARLEY, Judge.

David Williams was the president of Air Carrier Express Services, Inc. (ACES). He was also the president and the treasurer of appellee-plaintiff The Midstates Group, Inc. (Midstates). Williams, in his capacity as president of ACES, sought to obtain a loan from appellant-defendant Bank South, N.A. (the Bank). The purpose of the loan was to enable ACES to purchase an airplane. The Bank informed

Williams that it would require additional collateral in the amount of $200,000 as well as a security interest in the airplane. Williams advised the Bank that Midstates would provide any necessary additional collateral on behalf of ACES. The Bank suggested that such additional collateral take the form of a certificate of deposit. The Bank also informed Williams that, insofar as the loan transaction he proposed would involve collateral which belonged to Midstates rather than to ACES, the actual borrower, the consent of Midstates' Board of Directors to the pledge of its certificate of deposit as security for ACES's debt would be required.

Apparently at Williams' direction, $200,000 in funds belonging to Midstates was transferred to the Bank and, with those funds, a certificate of deposit was purchased from the Bank payable to the order of Midstates. Midstates had two directors, Williams and Joe Guy. Williams presented to the Bank, as it had requested, a document which purported to evince the written consent of both of Midstates' directors to a pledge by Midstates of its certificate of deposit as security for ACES's debt. The signature of Williams on this document was genuine. However, Guy's purported signature to the document had been forged by Williams. The Bank accepted the document containing Guy's forged signature as genuine and made no further inquiry into Midstates' consent to the pledge of its certificate of deposit as security for ACES's debt. Williams, as president of Midstates, then indorsed to the order of the Bank the certificate of deposit which was payable to Midstates. The loan from the Bank to ACES was consummated, and ACES purchased the airplane with the loan proceeds. Subsequently, the airplane was completely destroyed in a crash. As a result, ACES defaulted on its note to the Bank. Accordingly, the Bank claimed the proceeds of the certificate of deposit as security for ACES's debt and, when Midstates subsequently made a demand for payment of that instrument, the Bank refused that demand.

Midstates then brought this suit, alleging the following: that the certificate of deposit belonged to it; that the Bank had converted the instrument; and, that the liability of the Bank for that conversion was $200,000, the face amount of the instrument. Midstates filed a motion for summary judgment. The Bank filed a cross-motion for summary judgment, asserting that it was a holder in due course of the certificate of deposit and that, having acted in good faith and in a commercially reasonable manner, its liability, if any, should be limited pursuant to the provisions of OCGA § 11-3-419 (3). As to the issue of liability, the trial court granted summary judgment in favor of Midstates and denied the Bank's motion for summary judgment, holding that, as the result of the forgery of Guy's signature, the Bank was not a holder of the certificate of deposit. As to the issue of the extent of liability, however, the trial court granted the Bank's motion and de-

nied Midstates', holding that the Bank's liability would be limited by its good faith and its commercially reasonable acts. The Bank appeals from the trial court's order granting summary judgment to Midstates as to the issue of liability.

1. The face of the certificate of deposit evinces the Bank's original acknowledgment of its receipt of $200,000 belonging to Midstates and the Bank's engagement to repay Midstates. See OCGA § 11-3-104 (2) (c). As the instrument was issued by the Bank to the order of Midstates, it is clear that Midstates was the original holder thereof. " 'Holder' means a person who is in possession of . . . an instrument . . . drawn, issued or indorsed to him or to his order or to bearer or in blank." OCGA § 11-1-201 (20). The Bank asserts that the instrument was transferred back to it from Midstates, so that the Bank then became the holder of its own certificate of deposit. See generally *Federal Deposit Ins. Corp. v. West*, 244 Ga. 396 (260 SE2d 89) (1979). However, for the Bank to have become the holder of the instrument which it issued to the order of Midstates, the indorsement of Midstates would have to appear thereon. "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement. . . . [The] indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." OCGA § 11-3-202 (1, 2). On its back, the certificate of deposit contains the purported special indorsement of Midstates to pay the instrument to the order of the Bank (see OCGA § 11-3-204 (1)), which indorsement reflects that it was made by Williams acting in his capacity as a corporate official of Midstates. See generally *Larry's Mobile Homes v. Robins Fed. Credit Union*, 161 Ga. App. 822, 823 (2) (288 SE2d 800) (1982). The issue thus becomes whether this special indorsement made by Williams was "written by or on behalf of" Midstates so as to render the Bank the holder of the instrument.

"A signature may be made by an agent . . . and his authority to make it may be established as in any other cases of representation. . . ." OCGA § 11-3-403 (1). "Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it. . . ." OCGA § 11-3-404 (1). The Bank asserts that Williams was authorized to make the corporate indorsement to the instrument, while Midstates asserts that the indorsement in its name was unauthorized. " 'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority. . . ." OCGA § 11-1-201 (43). A review of the record shows that Midstates, as the movant for summary judgment, did not produce any evidence that Williams, as a corporate official of Midstates, lacked actual, implied or apparent authority to place the cor-

porate indorsement on negotiable instruments of which Midstates was the holder. To the contrary, the unrebutted evidence of record shows that, as the president and treasurer of Midstates, Williams had at least apparent authority — if not actual authority under the corporate by-laws — to place the corporate indorsement upon negotiable instruments held by Midstates. See generally *Stubbs v. Fourth Nat. Bank of Macon*, 12 Ga. App. 539, 540 (5) (77 SE 893) (1913). Since Williams had at least apparent authority — if not actual authority — "to execute the indorsements, [Midstates] could not have defeated such indorsements merely by alleging that in truth and in fact he had no such authority and that his act in indorsing the paper had not been ratified." *Massell v. Fourth Nat. Bank of Macon*, 38 Ga. App. 601, 604 (1) (144 SE 806) (1928).

In determining that the Bank was not a holder, the trial court erred in focusing upon the question of whether Williams had authority to pledge Midstates' certificate of deposit as security for the debt of ACES. The question of to what use Williams was ultimately authorized to put an instrument held by Midstates after he had placed the corporate indorsement on it is separate and distinct from the question of whether he was authorized to indorse the instrument in the first instance. Under the unrebutted evidence of record, the indorsement made by Williams "was an authorized [i]ndorsement. [Cits.] What [may] *not* [have been] authorized was the use to which [he subsequently] put the [indorsed instrument]." (Emphasis in original.) *Bank South v. Grand Lodge*, 174 Ga. App. 777, 781 (1) (331 SE2d 629) (1985). Williams "did not *lack* the authority to [i]ndorse the [instrument], but he [may have] *abused* his authority. [Even assuming that] he unquestionably breached his fiduciary duties to [Midstates by pledging its instrument as security for ACES's debt], he did so using the authority [that Midstates had apparently if not] specifically conferred upon him." (Emphasis in original.) *Bank South v. Grand Lodge*, supra at 782 (2). It follows that the trial court erred both in granting summary judgment in favor of Midstates and in failing to grant summary judgment in favor of the Bank as to the issue of the Bank's status as a holder of the certificate of deposit.

2. It does not necessarily follow from Division 1 of this opinion that the trial court erred in denying summary judgment in favor of the Bank with regard to its status as a holder *in due course*. "A holder in due course is a *holder* who takes the instrument: For *value*; and In *good faith*; and *Without notice* that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." (Emphasis supplied.) OCGA § 11-3-302 (1).

The only "value" that the Bank asserts on appeal that it gave for the certificate of deposit is that it took the instrument as security for the loan to ACES. However, the act of merely taking an instrument as

security for a loan is not the equivalent of taking it for value. "A holder takes the instrument for value: To the extent that . . . he acquires a *security interest* in or a lien on the instrument otherwise than by legal process. . . ." (Emphasis supplied.) OCGA § 11-3-303 (a). "[A] security interest is not enforceable against . . . third parties with respect to the collateral and does not attach unless: . . . The debtor has rights in the collateral." OCGA § 11-9-203 (1) (c). Accordingly, for the Bank to have acquired an enforceable security interest in the instrument which belonged to Midstates and thus to have given value for it, then ACES, as the debtor, must have had "rights" therein.

When the evidence of record is construed most strongly against the Bank, as the moving party, it appears that ACES had no "rights" in the certificate of deposit. The instrument, which belonged to Midstates, was merely in the possession of Williams, who also happened to be a corporate officer of ACES. "What kinds of 'rights in the collateral' may the debtor acquire that will suffice under [OCGA § 11-9-203 (1) (c)]? If the [collateral is] entirely owned by a third party, mere acquisition of possession by the debtor will not be enough. . . . Of course, an owner may authorize a debtor to use his (the owner's) assets as collateral for the debtor's obligation." White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 23-4, p. 916 (2d ed. 1980). "One cannot encumber another['s] . . . property in the absence of consent, estoppel, or some other special rule. [Cit.]" *First Nat. Bank &c. Co. v. Smithloff*, 119 Ga. App. 284, 290 (5) (167 SE2d 190) (1969). See also *Northwestern Bank v. First Va. Bank of Damascus*, 585 FSupp. 425 (W.D. Va. 1984) (citing *First Nat. Bank &c. Co. v. Smithloff*, supra, as controlling authority). Construing the evidence most strongly against the Bank, the instrument belonging to Midstates was merely in possession of Williams, who also happened to be a corporate officer of ACES. The Bank produced no unrebutted evidence that Midstates had consented to the pledge of its instrument as security for ACES's debt or that estoppel or some other special rule demanded a finding, as a matter of law, that the certificate of deposit had been taken for value. Accordingly, the trial court did not err in denying the Bank's motion for summary judgment with regard to the issue of its status as a holder in due course.

Our holding that the evidence of record would not demand a finding that the Bank gave "value" for the instrument renders moot any consideration of the issues of the Bank's good faith and notice.

3. Midstates has filed no cross-appeal from the trial court's ruling that, pursuant to OCGA § 11-3-419 (3), the Bank's liability for any alleged conversion of the certificate of deposit is limited to the amount of proceeds remaining in its hands. Accordingly, this issue is not before us at this time and this opinion should not be construed as

either affirming or reversing that ruling.

4. With regard to the Bank's status as a holder of the certificate of deposit, the trial court's orders granting summary judgment to Midstates and denying summary judgment to the Bank are reversed. With regard to the Bank's status as a holder in due course, the trial court did not err in denying the Bank's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 20, 1987 —
REHEARING DENIED DECEMBER 16, 1987.

*Susan A. Cahoon, Stephen E. Hudson,* for appellant.
*Deborah S. Ebel, Marian Exall,* for appellee.