## A90A2220. HOLLIDAY CONSTRUCTION COMPANY v. SANDY SPRINGS ASSOCIATES, INC.

### (400 SE2d 380)

PER CURIAM.

Sandy Springs Associates (Sandy Springs), CCR Construction Company (CCR) and Holliday Construction Company, Inc., (Holliday) executed a joint payment agreement on October 9, 1987, which was executed on behalf of Holliday by Lewis O. Powell III, treasurer, director, shareholder and "Project Manager" for Holliday. The agreement was presented to Sandy Springs by CCR as an inducement to obtain funds necessary to complete its subcontract with Holliday. It provided that Holliday was to make a joint payment to Sandy Springs and CCR in the amount of $10,000. Payments were to be delivered to Sandy Springs at its address as set forth in the contract. In accordance with the agreement, Sandy Springs advanced $1,360 on October 9, 1987, and $8,600 on October 15, 1987, to CCR. Sandy Springs received a check for $3,206.58 drawn on a Holliday account on November 23, 1987, which was credited to Holliday under the joint payment agreement. Holliday, however, has since failed to pay $6,793.42, the remaining balance, although it has paid $5,000 directly to CCR. On January 13, 1985, Holliday issued a check payable to CCR and Sandy Springs in the amount of $710.42 and delivered it to CCR. Sandy Springs, however, neither received the check nor received any benefit from it. Sandy Springs brought a breach of contract action against CCR and Holliday, and later filed a motion for summary judgment. The motion was granted against Holliday, and Sandy Springs was awarded damages in the amount of $6,793.42, plus court costs and post-judgment interest. Holliday Construction Company appeals.

1. Holliday first contends that the trial court erred in finding that Lewis O. Powell III possessed the requisite authority to contractually bind appellant.

It was undisputed that Powell was an officer of Holliday, a shareholder in the corporation, and project manager of the construction project in question, that he signed the agreement as "Project Manager," and that his signature is genuine. There is nothing in the record to indicate either that Sandy Springs had knowledge of Powell's lack of authority to bind his company or that Powell lacked apparent authority to sign the agreement on Holliday's behalf. Powell admitted in his deposition that he signed the agreement for Holliday, that Holliday paid $5,000 directly to CCR without Sandy Springs being made the co-payee on the check, and that the check was not delivered to Sandy Springs.

"A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation." OCGA § 11-3-403 (1). Under OCGA § 11-3-404 (1),

"Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it." An unauthorized signature is one made without actual, implied or apparent authority. OCGA § 11-1-201 (43). Where a corporate officer has at least apparent authority, if not actual authority to place the corporate endorsement upon negotiable instruments, the defendant cannot defeat such endorsements merely by alleging that in truth and in fact he had no such authority and that his act in endorsing the paper had not been ratified. *Bank South v. Midstates Group*, 185 Ga. App. 342, 344 (364 SE2d 58) (1987); *Massell v. Fourth Nat. Bank of Macon*, 38 Ga. App. 601, 604 (144 SE 806) (1928). Since the unrebutted evidence shows that Powell had apparent authority to execute the document, Holliday cannot defeat the contract by merely alleging that he had no authority to sign on behalf of the corporation.

2. Appellant also claims that Powell's act in signing the contract was not ratified. It was ratified by the submission of the check for $3,206.58 which was made payable to both CCR and Sandy Springs to the place specified in the contract. Further evidence of ratification is found in the issuance of a second check to CCR and Sandy Springs as co-payees although it was never received by Sandy Springs. "Where a corporation knowing all of the facts accepts and uses the proceeds of an unauthorized contract executed in its behalf without authority, the corporation may be bound because of ratification. [Cits.]" *Western American Life Ins. Co. v. Hicks*, 135 Ga. App. 90, 91 (217 SE2d 323) (1975); *Lanier Ins. Agency v. Citizens Bank, Hogansville*, 168 Ga. App. 424 (309 SE2d 419) (1983). In the instant case, Holliday accepted the benefits of the loan to CCR and cannot now repudiate the contract under which it agreed to pay CCR jointly with Sandy Springs so that CCR's loan could be repaid. Thus, there remains no material issue of fact requiring jury resolution as to whether there has been a ratification of the contract.

3. Appellant also raises the issue of lack of consideration for the contract by first alleging that because appellant is not liable for "an amount of money," the contract is not supported by consideration. We disagree, because "any benefit accruing to the promisor, or any loss, trouble, or disadvantage undergone by the promisee, is a sufficient consideration, in the eyes of the law. . . ." *Vanguard Properties &c. v. Murphy*, 136 Ga. App. 519, 521 (221 SE2d 691) (1975). Appellant's allegation that the obligation represents a pre-existing debt is also without merit. The agreement was collateral for the loan to CCR, and there was deposition testimony of Alan Smith of Sandy Springs Associates that a check would not have been given to CCR "without the collateral for the loan." There is no evidence that the loan proceeds represented a pre-existing debt.

4. Appellant's assertion that the contract was void for vagueness

is also without merit. While the contract may have contained some blanks, its meaning can be determined despite them. Interpretation of a contract is a question of law. OCGA § 13-2-1. No jury question is presented unless, after application of the applicable rules of construction, an ambiguity remains. *American Cas. Co. v. Crain-Daly Volkswagen*, 129 Ga. App. 576, 579 (200 SE2d 281) (1973); *Farm Supply &c. v. Cook*, 116 Ga. App. 814 (159 SE2d 128) (1967).

*Judgment affirmed. Deen, P. J., Pope and Beasley, JJ., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.

Speaking for the writer alone, it is appropriate under the special circumstances to make additional comments.

"Justice Bleckley having resigned, at the conclusion of his last opinion, read from the bench the [following] exquisite little poem, which was ordered spread upon the minutes by the court. It constitutes a fit close to the judicial career of one whose opinions in these reports show him not only to have been the profound lawyer, but also the accomplished scholar (R.)

### "IN THE MATTER OF REST.

1. Rest for hand and brow and breast,
For fingers, heart and brain!
Rest and peace! a long release
From labor and from pain:
Pain of doubt, fatigue, despair —
Pain of darkness everywhere,
And seeking light in vain!

2. Peace and rest! Are they the best
For mortals here below?
Is soft repose from work and woes
A bliss for men to know?
Bliss of time is bliss of toil:
No bliss but this, from sun and soil,
Does God permit to grow."

*In The Matter of Rest*, 64 Ga. 452 (September Term, 1879).

The legendary and talented Chief Justice Logan Edwin Bleckley also penned these parting words as he left the court:

### "FAREWELL TO THE LAW.

Farewell, my liege, beloved and long, long-served, good-bye,
My leave I take and forth I go with wept and sobbing sigh,
Which, now condensed to pensive dew, is trembling in my eye.

How oft in legal combat met have I, at low or lofty bar,
Contending suitors helped to wage or ward the fierce forensic war,
When rushed the battle horses and flew the battle car.

For more than one full decade, with pale, unsandaled feet,
In pure and spotless ermine I mused on Georgia's seat,
And righteous judgment rendered between the Tares and Wheat.

My grand majestic master, vice-gerent here of God,
I quit thy special service, but stay beneath they rod,
An old and humble servant, uncovered and unshod."

Logan E. Bleckley, *A Memorial by The Georgia Bar Association*, p. 168 (Mercer University Archives Reprint 1982).

Justice Robert H. Hall (now a United States District Court Judge) when leaving the Georgia Appellate Court wrote a farewell message, which I now adapt to the present occasion: "This is my final opinion after over [25] years of service on the [Court of Appeals] of Georgia. They have, indeed, been wonderful years for me, and I will cherish them as long as I live.

"I wish to thank the [distinguished Governor Carl E. Sanders] who appointed me to [the Court of Appeals of Georgia] and the people of Georgia who permitted me to serve in this state's judicial system.

"During my [25] years on the Court of Appeals, I had the pleasure of serving with [28] members of [this] court [and in writing, voting on and 'participating' in over 13,000 opinions]. . . . I will always be grateful to these judges . . . for the kindness and assistance they extended to me during my tenure. I am also thankful for the conscientious work of my personal staff and the [support staffs of all the judges, past and present] who have served with me.

"God Bless and God Save the judicial system of Georgia, and its bench and bar." *Grantham v. State*, 244 Ga. 776 (1979).

While concurring fully with the words of wisdom of Chief Justice Bleckley, written in 1879, and Justice Hall, written 100 years later, I would add that justice continues in 1990 to be dispensed under our Georgia Court of Appeals credo, formulated by then Chief Judge Jule W. Felton: "Upon the integrity, wisdom and independence of the judiciary depend the sacred rights of free men," as well as under the motto of the Supreme Court of Georgia: "Fiat Justitia Ruat Caelum."

DECIDED DECEMBER 5, 1990.

*Daniel W. Lee,* for appellant.
*Duncan, Thomasson & Acree, E. Marc Acree,* for appellee.