A92A0878. FIRST ROME BANK v. REESE OIL COMPANY, INC.
(426 SE2d 384)

Andrews, Judge.

First Rome Bank, defendant below, appeals the grant of partial summary judgment to Reese Oil Company, Inc. on a claim for conversion under OCGA § 11-3-419.

Viewed in favor of the bank, opponent of summary judgment, the undisputed facts were that Reese Oil had an account with First Rome. Reese Oil supplied First Rome with its corporate authorization, which showed three authorized signers for the account: Sam Reese, Jr., president and sole stockholder of the company; W. C. Reese, Sam's brother and vice-president of the company; and Dorothy Reese, Sam's wife and secretary-treasurer of the company. That authorization allowed any of these three to "[e]ndorse checks and orders for the payment of money and withdraw funds on deposit. . . ."

In late 1988, Sam Reese hired Lisa Raper, the wife of the executive vice-president of First Rome, to work in the office of Reese Oil. Among her responsibilities were opening the mail, posting customers' payments on their accounts, noting on the office ledger with a "P" when amounts had been posted to the customer's account, filling out receipts for the customers, making out deposit slips and taking the deposits to the bank, and reconciling monthly bank statements. There was an endorsement stamp used for the deposits, which read "Reese Oil Co., 1206 N. 5th Ave., Rome, Ga. 30161." Sam Reese had occasionally cashed out checks payable to Reese Oil and bearing the endorsement stamp. He would go inside the bank and personally endorse his name under the stamp.

From July to December 1989, Raper presented numerous checks payable to Reese Oil to First Rome, bearing only the stamped endorsement, and received cash instead of depositing them into the company account, which she was not authorized to do. The defalcation resulted in a loss of over $20,000 to Reese Oil.

Because of its record-keeping system and the fact that Reese Oil

had one store which was set up on an electronic funds transfer basis, whereby receipts were sent to Houston and then funds electronically transferred back to the Reese Oil account in Rome, there was no method by which it could be determined if receipts from all sources equaled the bank deposits.

The training manual used by First Rome, as well as other industry publications used in its teller training, provided that "[s]tamped or typed endorsements are acceptable for deposit purposes only"[;] that checks marked "for deposit only" were accepted only for deposit; and generally, "[c]hecks made payable to corporations, businesses, and other organizations should never be cashed by a teller." The president of First Rome stated that these manuals and publications were "non-binding guidelines for practices and procedures," and that the preferences and requests of the bank's customers were also an important consideration in banking procedures.

During this six-month period, First Rome sent six bank statements to Reese Oil. Since his fiscal year ended in September, Sam Reese checked his statements more closely then and noticed a discrepancy between total receipts and monthly deposits, but he assumed it was attributable to the lag in receipt of proceeds from his credit card sales.

There was also an incident in which Sam Reese suspected that a check from Binkley's Exxon had not been deposited into the First Rome account. When Binkley received his statement and Sam Reese examined the check, it bore the stamped endorsement, so he "just assumed that I had — that the check had gone through the normal channels of deposit and that I had just made a mistake."

Reese Oil's motion for partial summary judgment contended that First Rome's cashing of checks payable to a corporate payee, endorsed only by rubber stamp, was not in accordance with reasonable commercial standards of banking as a matter of law and, therefore, First Rome was not entitled to the benefit of the affirmative defense of OCGA § 11-3-419 (3).

In granting summary judgment, the court focused on that section and concluded that the conduct of First Rome was "commercially unreasonable as a matter of law," and that First Rome "may not avail itself of the defense of good faith and reasonable commercial standards as a matter of law," relying on *Trust Co. Bank v. Henderson*, 185 Ga. App. 367 (364 SE2d 289) (1987), aff'd 258 Ga. 703 (373 SE2d 738) (1988); *Nat. Bank of Ga. v. Refrigerated Transport*, 147 Ga. App. 240 (248 SE2d 496) (1978); and *APCOA v. Fidelity Nat. Bank*, 703 FSupp. 1553 (N. D. Ga. 1988), aff'd 906 F2d 610 (11th Cir. 1990).

1. First Rome contends that the trial court's conclusion that OCGA § 11-3-406 was inapplicable to this situation is erroneous.

OCGA § 11-3-406 provides that "[a]ny person who by his negli-

gence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against . . . a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

The court below concluded, as do we, that Raper was authorized to place the endorsement stamp on the checks. "The question of to what use [Raper] was ultimately authorized to put an instrument . . . after [s]he had placed the corporate indorsement on it is separate and distinct from the question of whether [s]he was authorized to indorse the instrument in the first instance." *Bank South v. Midstates Group*, 185 Ga. App. 342, 345 (1) (364 SE2d 58) (1987). The evidence showed that Raper was authorized to stamp the checks and deposit them, the lack of authorization was only as to obtaining cash in lieu of depositing the checks to the corporate account. *Bank South*, supra; *Bank South v. Grand Lodge &c.*, 174 Ga. App. 777, 781 (1) (331 SE2d 629) (1985).

2. With regard to the affirmative defense raised by First Rome under OCGA § 11-3-419 (3), we conclude that the granting of summary judgment on this issue was error.

Initially, Reese Oil, as movant for summary judgment as to an affirmative defense, had the burden of piercing this defense. In support of its motion, Reese Oil submitted the affidavits of the three authorized signatories on the checking account, stating that they had not authorized Lisa Raper to cash checks on that account, nor had they ratified such actions by her.

In opposition, First Rome relied upon the deposition of Sam Reese and submitted the affidavit of the president of another local bank stating that the practice of cashing checks payable to Reese Oil at the request of its employee was in accordance with reasonable commercial standards and the affidavit of a certified public accountant stating that Reese Oil was negligent in not investigating the Binkley's Exxon check discrepancy.

" 'On a motion for summary judgment, the burden of establishing the non-existence of any genuine issue of fact is upon the moving party and all doubts are to be resolved against the movant. . . . (T)he moving party's papers are carefully scrutinized, while the [opponent's] papers, if any, are treated with considerable indulgence.' *Ham v. Ham*, 230 Ga. 43, 45 (195 SE2d 429) (1973)." *First Union Nat. Bank v. J. Reisbaum Co.*, 190 Ga. App. 234, 235 (378 SE2d 317) (1989). Reese Oil had the burden of piercing the "commercial reasonableness" defense. See *Abalene Pest Control v. Orkin Exterminating*, 196 Ga. App. 463, 466 (4) (395 SE2d 867) (1990); *Peppers v. Siefferman*, 153 Ga. App. 206, 207 (3) (265 SE2d 26) (1980).

In such a situation, introduction of opinion evidence by the opponent of summary judgment, such as the bank president's affidavit submitted here, can alone be sufficient to preclude summary judgment. *Bryan v. Bryan*, 248 Ga. 312 (282 SE2d 892) (1981); *Scott v. Owens-Illinois*, 173 Ga. App. 19, 22 (2) (325 SE2d 402) (1984).

Here, the issue was not whether the endorsement was authorized because the use of the stamp by Raper was authorized for certain purposes. Compare *Nat. Bank,* supra (collection agency depositing checks payable to a separate corporate entity into its corporate checking account without endorsement); *Trust Co. Bank,* supra (corporate checks cashed or deposited into individual's account over handwritten or blank endorsement); and *APCOA,* supra (setting up of unauthorized accounts and cashing corporate checks on unauthorized signature).

Whether the actions of First Rome in this situation were commercially reasonable is a question for the jury. *Stolle Corp. v. McMahon*, 195 Ga. App. 270, 272 (1) (393 SE2d 52) (1990); see *Bank South v. Harrell*, 181 Ga. App. 64, 66 (1) (351 SE2d 263) (1986). The fact that First Rome may not have followed its own internal operating procedures does not, without more, give rise to legal liability. *APCOA,* supra at 1558.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 23, 1992 —
RECONSIDERATION DENIED DECEMBER 9, 1992

*Hine, Carroll & Niedrach, John E. Niedrach,* for appellant.
*Shaw, Maddox, Graham, Monk & Boling, James D. Maddox,* for appellee.