### 69855. BANK SOUTH v. GRAND LODGE OF FREE & ACCEPTED MASONS FOR GEORGIA.
### 69856. DECATUR FEDERAL SAVINGS & LOAN ASSOCIATION v. GRAND LODGE OF FREE & ACCEPTED MASONS FOR GEORGIA.

(331 SE2d 629)

BEASLEY, Judge.

The Grand Lodge brought this action for conversion against appellants Decatur Federal Savings and Loan Association and Bank South, alleging that over a ten-month period its Grand Treasurer J. Kirk Nicholson had embezzled approximately $350,000 from accounts maintained at Decatur Federal by withdrawing cash and by writing checks to himself or the Lodge or the Trustees of a fund, which checks he endorsed and deposited in his business checking account at Bank South. The suit sought recovery of the funds less the amounts regained previously from Nicholson and his wife. Bank South and Decatur Federal both moved for summary judgments, which were denied, and this court granted their applications for immediate review.

The undisputed facts show the scheme. The Grand Lodge is a statewide organization headquartered in Macon. The Grand Treasurer is the chief fiscal officer of both the Grand Lodge and its Masonic Home. His authority is delineated in the Masonic Manual Code: "The Grand Treasurer shall have charge of all of the funds, properties and jewels of the Grand Lodge. It shall be his duty to attend all regular communications of the Grand Lodge, and, when required, to meet with the Grand Officers and committees and to produce all books and documents relating to his office, to make a full report at the regular communications, to pay all orders drawn on him by authority of the Grand Lodge, to receive all funds of the Grand Lodge and immediately to deposit them in the repository approved by it. . . . He shall also be the fiscal officer of the Masonic Home." Nicholson, as a public accountant and a past Grand Master who was familiar with the financial affairs of the Grand Lodge, was unanimously elected to serve a term as Grand Treasurer commencing in October of 1980, after having been appointed in March to serve the remaining portion of a deceased treasurer's unexpired term.

Nicholson handled all financial transactions with no supervision

over the performance of his duties and responsibilities. He was authorized as Grand Treasurer to endorse checks payable to the Grand Lodge, to make deposits into Grand Lodge accounts and to sign checks on behalf of the Grand Lodge on his own signature. He could make investments for the Grand Lodge, purchase certificates of deposit, make withdrawals for reinvestment and could on his own execute the documents necessary for withdrawing or transferring such funds. Essentially all Grand Lodge bank account statements were sent to him and he had sole responsibility for reconciling them. The books were audited only once a year.

Shortly after his appointment in March of 1980, Nicholson requested the Grand Master to authorize on behalf of the Grand Lodge the opening of several savings accounts and the purchase of several certificates of deposit at Decatur Federal. Although the Grand Lodge had always maintained its bank accounts near its headquarters in Macon, it authorized Nicholson, who lived in Atlanta, to open these accounts for his convenience and to serve as a holding account to allow daily contributions to accumulate so that at the proper time investments could be made by the Grand Treasurer. The withdrawal of funds was provided for in the customer Grand Lodge's application for each account. The applications read: "Specimens of the signatures of those authorized to make withdrawals from said account and to act in connection therewith are indicated below, and you are authorized to act upon the request of said organization bearing any *One* of such signatures, . . . until you receive written notice of the authorization of others to sign for it together with specimen signatures of such person or persons. . . . [Y]ou are hereby relieved of any liability in connection with collection of such items which are handled by you without negligence, and you shall not be liable for the acts of your agents, subagents, or others or for any casualty. . . ."

Nicholson's was one of the authorized signatures, without the addition of his title, although it was shown on the application that his title was that of Grand Treasurer. The reverse side of the application form was a resolution of the Grand Lodge which authorized Decatur Federal "to pay withdrawals until further written notice to it signed in the name of this organization as indicated below by any *One* person or persons, whose names appear below. . . ." Although the two alternatively authorized names were not typed "below," the Grand Lodge's secretary certified "that the signatures on the reverse side hereof are the true signatures of the persons authorized to sign as indicated in connection with said account."

During the period between March and August of 1981 Nicholson wrote checks and withdrew the funds which form the basis of the Grand Lodge's claims from Decatur Federal and deposited them in a Bank South account in the name of "J. Kirk Nicholson, Public

Accountant."

The Grand Lodge had begun receiving complaints in December of 1980 about Nicholson's failure to discharge his duties as Grand Treasurer, including the failure to write routine payroll and reimbursement checks on a timely basis, and neglecting other Grand Lodge responsibilities. In April of 1981, the Grand Lodge asked for Nicholson's resignation. An audit of the books and records would have been required by the Masonic Code if Nicholson resigned from office at that time but he requested that he be permitted to remain in office until the end of his term in October "so as not to put any additional expense on the Grand Lodge of having to have two audits." Although Nicholson submitted his letter of resignation effective the end of August and asked to have his name expunged "from the rolls of Masonry," his embezzlements were not discovered by the Grand Lodge until the annual fiscal year-end audit in October of 1981. When the auditor reported that a considerably larger amount of money had been deposited in the Decatur Federal accounts than was recorded as withdrawn or still on deposit, the Grand Lodge met with representatives from Decatur Federal and Bank South who furnished it with copies of the records necessary to trace assets, prepare a claim for the fidelity bonding company and assemble information for the district attorney to present to the grand jury. An action was also brought by the Grand Lodge against Nicholson and his new wife, a former employee of Decatur Federal, which was settled after the Nicholsons transferred real and personal property to the Grand Lodge valued in excess of $160,000. Accompanying the delivery of these items were two documents releasing cars and jewelry to the Grand Lodge. A consent order was later entered releasing Mrs. Nicholson from all further claims and dismissing the action against her with prejudice, but expressly reserving the right of action against Mr. Nicholson "by all those suffering loss including [the Grand Lodge]." This suit followed.

1. The checks which form the basis of the Grand Lodge's claim were made payable to Nicholson by Decatur Federal in two forms: (1) "Trustees Ga. Masonic Home Endowment Fund c/o J. Kirk Nicholson, Jr." and (2) "Grand Lodge of Ga. F. & A. M. c/o J. Kirk Nicholson, Jr. 1010 Scott Blvd. Apt. E-3 Decatur, Ga. 30030." The Georgia statute controlling deposits of fiduciaries provides that "a savings and loan association may receive deposits in the name of an administrator, executor, guardian, trustee, or other fiduciary in trust for a named or an unnamed beneficiary or beneficiaries. Such a deposit and dividends or interest thereon or other rights relating thereto may be paid or delivered, in whole or in part, to such fiduciary or may be exercised by such fiduciary without regard to any notice to the contrary so long as such fiduciary is living and until the association has received notice of the death of such fiduciary. The payment or deliv-

ery to any such fiduciary, . . . to whom any such payment or any such delivery of rights is made, shall be valid and sufficient release and discharge of such association for the payment or delivery so made." OCGA § 7-1-790.

The official comment to former Code Ann. § 41A-3522 (Ga. L. 1974, pp. 705, 749), the source of the 1981 codification of the statute, notes that this provision restates former Code Ann. § 16-432 (Ga. L. 1937-38, Extra. Sess., pp. 307, 319) "with appropriate linguistic changes." That section was derived from the prior legislative reconciliation of the Banks and Banking Laws in Ga. L. 1919, pp. 135, 209 (former Code § 13-2042), which provided in its original form: "Whenever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary whether bona fide or mala fide shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting or purporting to act be given or not, *such bank shall be authorized to pay the amount of such deposit or any part thereof, upon the check of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited.*" (Emphasis supplied.)

It is abundantly clear from this legislative history that the statutory law of Georgia shields Decatur Federal from liability under the facts here. The common law of this state also has adhered to these principles for almost a century. As stated by Justice Cobb in *American Trust & Banking Co. v. Boone*, 102 Ga. 202, 204 (1) (29 SE 182) (1897): "Every person is presumed to have the intention of discharging whatever duty the law may cast upon him; it is therefore presumed that a trustee will faithfully administer the trust and will not misappropriate the funds of the estate which are committed to his care. When a trustee deposits money in a bank, the bank has a right to assume that the money so deposited will be applied by the trustee to the proper purposes under the trust, and acting under this assumption it may lawfully pay the checks drawn by the person depositing the money, whether signed in his representative capacity or not."

"While it is the rule that 'if a bank has notice or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability, becomes responsible for the wrong done, and may be made to replace the funds which it has been instrumental in diverting' (*American National Bank v. Fidelity Co.*, 129 Ga. 126, 129 (58 SE 867, 12 AC 666), it is the general rule that every person is presumed to have the intention of discharging whatever duty the law may cast upon him (*Truluck v. Peeples*, 1 Ga. 3, 5 [1846]) . . ."

*Tattnall Bank v. Harvey,* 186 Ga. 752, 753-54 (198 SE 724) (1938). There being no question that Decatur Federal was unaware until apprised by the Grand Lodge that Nicholson's withdrawals of funds were unauthorized, it follows that it was entitled as a matter of law to summary judgment in its favor.

In paying out the funds, it was merely complying with the order of its customer to allow withdrawals on Nicholson's signature. This authorization was not limited to withdrawals for designated purposes, or only by check and not cash, or only to certain payees. The Grand Lodge attempts to cast upon the depository a legal duty to challenge the withdrawal if it is large or for cash or without the word "Treasurer" after Nicholson's name, etc. However, it shows no legal right in the depository to make such invasive inquiry into the private affairs of the Grand Lodge, much less a duty.

Nor does the opinion of the Grand Lodge's banking expert cast the issue into one for a jury. What was cited as a failure to follow "reasonable" or "prudent" banking practices overlooks the withdrawal directions given to Decatur Federal by its customer and, in addition, does not square with the law in Georgia regarding the legal duties owed. Moreover, the effort of the Grand Lodge to establish that Decatur Federal did not follow "reasonable commercial standards applicable to the business" relates to its contention that the signatures were forged endorsements, OCGA § 11-3-419 (1) (c) and (3), but Nicholson's was an authorized endorsement. OCGA §§ 11-3-403, 11-2-201 (3). Cf. *Trust Co. of Ga. Bank of Savannah v. Port Terminal &c. Co.,* 153 Ga. App. 735 (266 SE2d 254) (1980). What was *not* authorized was the use to which Nicholson put the withdrawn funds. That was beyond Decatur Federal's knowledge or control.

2. Much of what has been discussed above is likewise applicable to Bank South. " 'In accordance with the general principle thus given expression, and in view of the multitudinous transactions in the ordinary daily course of banking, such institutions are not to be hampered and the conduct of their business, in which the public has a vital interest, clogged and slackened by unreasonable restrictions and overburdens. Therefore it is the rule, supported by the overwhelming weight of authority, that the mere fact that a fiduciary deposits in a bank to his individual account a check drawn by him in his fiduciary capacity, or transfers funds by a check from an account in the bank in his name as a fiduciary to his personal account in the bank, will not of itself charge the bank with knowledge or notice that he is misappropriating or will misappropriate such funds. [Cits.]' . . . 'To charge a bank with notice that a depositor is acting in violation of his trust so as to render it liable for the amount paid out on his check or order *to one other than the bank itself,* the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishon-

estly, or adequate notice to the bank may come from circumstances which reasonably support the *sole inference* that a breach of trust is intended. [Cits.] [Emphasis the court's.] . . . "Simple neglect to inquire about circumstances which ought to have excited attention is not enough, just as it is not enough to prove a want of good faith in purchasing negotiable paper . . . Commercial transactions are not put within the strict fetters of constructive notice." ' " *Nat. Factor & Investment Corp. v. State Bank of Cochran,* 224 Ga. 535, 538-39 (1) (163 SE2d 817) (1968), citing *Nat. Nugrape Co. v. C & S Nat. Bank,* 94 Ga. App. 5, 14 (93 SE2d 381) (1956). See also OCGA § 7-1-352; *Flo-Control, Inc. v. Northeast Bank,* 150 Ga. App. 880 (258 SE2d 695) (1979).

Nicholson did not *lack* the authority to endorse the checks, but he *abused* his authority. While he unquestionably breached his fiduciary duties to the Grand Lodge, he did so using the authority it specifically conferred upon him. There was nothing to put Bank South on notice so as to raise a legal duty to inquire. Cf. *Nat. Bank of Ga. v. Refrigerated Transport Co.,* 147 Ga. App. 240 (248 SE2d 496) (1978). In such a situation, Bank South as the depository bank is not liable to the principal for the dishonest acts of its officer or fiduciary and the bank cannot be held responsible for the misapplication of the proceeds. Neither the plaintiff's depository nor the depository bank of the embezzled funds can be liable for conversion when the former follows its depositor's instructions and when the latter does not inquire into the source of funds being deposited. Consequently, the trial court also erred in refusing to grant summary judgment to Bank South.

3. Because of the above rulings it is unnecessary for us to consider the enumerations based upon the purported agreements to release Nicholson from liability, thereby absolving both appellants as alleged joint tortfeasors.

*Judgments reversed. Birdsong, P. J., and Benham, J., concur.*

DECIDED MAY 15, 1985.

*Richard R. Cheatham, John J. Worley,* for appellant (case no. 69855).
*B. Michael Mears,* for appellant (case no. 69856).
*Harris Bullock, William E. Zachary,* for appellee.