76461. LOUIS et al. v. CITIZENS & SOUTHERN BANK OF DUBLIN.
(375 SE2d 82)

POPE, Judge.

Josseline Louis and Moganue Pierre Louis filed suit in Laurens County Superior Court against the Citizens & Southern Bank of Dublin (C & S), alleging that they were the named payees of two cashier's checks in the amount of $5,000 each, upon which their endorsements were forged; and that C & S paid these instruments in accordance with the forged endorsements, thereby converting their property and damaging them in the amount of the instrument. They further sought attorney fees and exemplary damages of $100,000 each because of the intentional conversion of their property. C & S answered, contending inter alia that its payment of the items in issue was done in good faith and in accordance with the reasonable commercial standards of banking, and any loss suffered by the plaintiffs was through their own negligence.

The evidence presented at trial showed that Arnold Pierre Louis, a citizen of Haiti, was employed in Waycross, Georgia as a turpentine worker when he was killed in a tractor-trailer collision in 1983. Frankie Lee Perry, an undertaker in Waycross, testified that he had buried the deceased. Subsequently, Perry was contacted by Valner Jean Baptiste, the deceased's half-brother, who asked for Perry's assistance in handling the estate. The two men went to Haiti, where the decedent's family resided, and Perry was appointed administrator of the estate and guardian of the two minor children of Arnold Pierre Louis. In order to distribute the proceeds of the estate, which the

family intended to use to build a home, Perry purchased two cashier's checks on December 17, 1983 in the amount of $5,000 each from the Farmers & Merchants Bank of Lakeland, Georgia. One of the checks was made payable to Helene Periclesse and Moganue Pierre Louis, the mother and father of the deceased, and the other to his widow, Josseline Louis. Because of the political unrest and corruption in Haiti, Perry did not want to mail these checks to the payees, so he agreed to allow Baptiste, who had planned to return there, to deliver them.

Baptiste maintained a checking account at the appellee C & S Bank in Dublin, Georgia, and on December 27 and 29, 1983, the two checks were deposited in his account. At the time the checks were presented for deposit they bore what appeared to be the endorsements of the named payees followed by the endorsement of Baptiste. One check was deposited in full to Baptiste's account and the other was a "split" deposit, in which Baptiste retained $800 in cash and deposited the remaining $4,200. Subsequently, C & S received a letter dated March 21, 1984, from counsel for appellants stating that he represented Perry as guardian of the minor children, and inquiring as to the whereabouts of Baptiste and how the endorsements were obtained on the checks. Bob Stout, C & S's operations officer, testified that after he investigated and was unable to locate Baptiste, he "flagged" Baptiste's account so that the next time he came in the bank he was instructed to go see Stout. As of March 21, 1984, Baptiste had a $150 balance in his account.

Over appellants' objection Stout was allowed to testify that when Baptiste returned to the bank Stout questioned him about the endorsements on the checks and Baptiste told him he went to Haiti and the payees endorsed the checks "with instructions to him to return to the States and send them money as needed on a kind of on-going basis, . . ." which "sounded logical" to Stout. When asked to show some proof that money had been sent to the payees, Baptiste produced a valid money order receipt and told Stout that he had other receipts at home. Stout asked him to produce these receipts so he could respond to the letter from appellants' lawyer, but Baptiste never returned.

By letter dated June 19, 1984, appellants' attorney notified Stout that the checks were not endorsed by the payees, that Baptiste was not authorized to endorse them, and that since they were wrongfully honored demand was made for reimbursement. The testimony of appellants consisted of questions and translated responses to written depositions read in court. Both Josseline Louis and Moganue Pierre Louis denied receiving any money, endorsing the checks, or authorizing Baptiste to deposit the checks and forward the money to them. Baptiste did not return to Haiti after Perry was appointed adminis-

trator of the estate, and appellants gave no instructions to Baptiste or anyone acting in their behalf concerning the delivery of any money, property or checks to them in Haiti. The jury returned a verdict in favor of C & S, and appeal is brought from the judgment entered thereon. *Held*:

1. Under cross-examination Stout was asked whether, if he had received an affidavit of forgery, C & S would have repaid the appellants the $10,000 deposited to Baptiste's account. He replied that under such circumstances he would have been obligated to return these funds to the drawee bank, and that the reason this was not done was because no affidavit of forgery had been received. Appellants contend that these statements constitute a binding admission in judicio that C & S is liable to them for payment on the checks.

We do not agree. When all of the testimony is considered as a whole, it is clear that this one isolated response did nothing more than to establish the procedures generally utilized by commercial banking institutions, as testified to by Stout and two other witnesses from the banking industry. Also, Stout later clarified that he would have sought legal advice at the time of presentment of an affidavit of forgery to determine whether it should be honored or not. Indeed, OCGA § 11-3-419 (3) provides that when an instrument is paid on a forged endorsement, subject to provisions concerning restrictive endorsements, a bank representative "who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." Assuming the date of notice to C & S to be the letter of March 21, 1984, that amount was $150.

Moreover, C & S was entitled to rely on the presumption that it's customer, Baptiste, was acting lawfully as agent for the named payees, and was authorized by OCGA § 7-1-352 to apply the deposits as ordered. See *National Bank of Ga. v. Weiner*, 180 Ga. App. 61, 65 (348 SE2d 492) (1986); *Bank South v. Grand Lodge*, 174 Ga. App. 777 (1) (331 SE2d 629) (1985). The jury could have further found from the evidence that it was the negligence of Perry in turning over the checks to Baptiste for delivery, rather than any negligence on the part of C & S, that precipitated the ensuing forgery. These valid defenses were in no way foreclosed by one statement of Stout, which considered in the context of his entire testimony, failed to constitute a solemn admission in judicio of the liability of C & S on the checks.

2. We are likewise unpersuaded by appellants' arguments that Stout's testimony concerning his conversation with Baptiste was inadmissible on the grounds of hearsay and irrelevancy. "When, in a legal investigation, information, conversations, letters and replies, and sim-

ilar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." OCGA § 24-3-2. In light of the appellants' demand for punitive damages, the conduct and motives of C & S in investigating Baptiste's whereabouts, as requested by the letter from appellants' attorney, was certainly material to the question of its liability for acting in bad faith. See *Commercial Union Ins. Co. v. Smith*, 179 Ga. App. 734 (347 SE2d 701) (1986). If Stout reasonably believed that Baptiste was acting legitimately as an agent for his family in Haiti, then according to reasonable commercial banking standards no further investigation was required. See OCGA § 7-1-352; *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, 235 Ga. 229 (219 SE2d 162) (1975); *National Bank of Ga. v. Weiner*, 180 Ga. App. at 64-65. Thus, the trial court did not err in admitting this evidence for whatever weight and credit the jury might give it.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

### On Motion for Rehearing.

On motion for rehearing appellant argues that this court "has erroneously applied OCGA § 24-3-2 in allowing the admission of hearsay testimony to explain conduct which was not relevant to any issue in the case"; and "has overlooked and failed to consider the fact that hearsay testimony, allegedly admitted to explain conduct under OCGA § 24-3-2, was admitted for all purposes." Appellant's conclusion that OCGA § 24-3-2 prohibited admission of the statements of Valner Jean Baptiste through Stout's testimony is unwarranted, as hearsay evidence is governed by OCGA § 24-3-1. Stout's testimony concerning his conversation with Baptiste was admissible as *original* evidence under OCGA § 24-3-2, not to prove whether Baptiste went to Haiti and obtained the endorsements of the payees on the checks, but to show why Stout acted in the manner in which he did.

The Supreme Court in *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982), citing Greenleaf, Evidence (5th ed. 1850), distinguished the hearsay exception found in OCGA § 24-3-1 and explained the purpose of OCGA § 24-3-2, stating: " 'it does not follow, because the writing or words in question are those of a third person, not under oath, that therefore they are to be considered as hearsay. On the contrary, it happens in many cases, that the very fact in controversy is, whether such things were written, or spoken, and not whether they were true. . . .' Id. at p. 127. Greenleaf then wrote: 'Thus, where the question is, whether the party acted prudently, wisely or in good faith, the *information*, on which he acted, whether true or false, is original and material evidence. . . . This doctrine applies to all other communications, wherever the fact that such communication was

made, and not its truth or falsity, is the point in controversy.' (Emphasis in original.) Id. 127 to 129. . . . In addition, it appears that [OCGA § 24-3-2] should be understood not as an exception to the rule against hearsay but as an explanation of what is not hearsay. Green, Ga. Law of Evidence, § 288 (1957)." (Indention omitted.) 249 Ga. at 866-867.

Stout's testimony that Baptiste represented himself to be acting on behalf of appellants when he deposited the checks in his account was relevant to explain Stout's subsequent conduct in pursuing an investigation into the matter, not as to whether Baptiste's statements were true or false. Since this conduct was material to the issue of whether C & S acted in good faith, the testimony was admissible under OCGA § 24-3-2. *Athena Prods. v. Geographics*, 168 Ga. App. 828 (2) (310 SE2d 547) (1983).

*Motion for rehearing denied.*

DECIDED OCTOBER 14, 1988 —
REHEARING DENIED NOVEMBER 7, 1988 — 

*Sutton, Reddick, Hackel & Hackel, Berrien L. Sutton,* for appellants.

*Robertson & Bobbitt, Morris S. Robertson,* for appellee.