A07A1275. DALTON POINT, L.P. v. REGIONS BANK, INC.
(651 SE2d 549)

BARNES, Chief Judge.

Dalton Point, L.P. sued Regions Bank, Inc., seeking reimbursement for money its bookkeeper, Patricia Page, had embezzled from the limited partnership's bank account over a four-year period. Dalton Point contended the bank was liable because it had notice that

---

the bookkeeper breached her fiduciary duty to the company. The bank denied liability and filed a third-party complaint against Page. The trial court denied summary judgment to the company and granted it to the bank, and Dalton Point appeals. For the reasons that follow, we affirm the trial court.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute &c.*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the record shows that, when Dalton Point opened its account with Regions Bank, the signatory card was signed by limited partner Ronald Ralston and by bookkeeper Page. A Certificate of Resolution signed by Ralston and Page and filed with the bank contained the following language:

> RESOLVED, that all drafts, checks and other items for the payment of money from the accounts identified above shall be signed by any 1 of the following: Ronald G. Ralston, Limited Partner; Patricia H. Page, Bookkeeper.
>
> * * *
>
> RESOLVED, that the Bank is authorized to honor all drafts, checks, or other items or instructions for payment or transfer from a deposit account even though drawn, endorsed or otherwise payable to a person identified above, and whether presented for cash or for credit to the account of that person or another person, or in payment of an individual obligation of that person or another person, and the Bank need make no inquiry concerning such withdrawals or dispositions of the money, items or credit given therefor.

Dalton Point owed monthly payments of $23,089.86 to Regions Bank for a bank loan. Page owed monthly payments of $900 to the bank for a personal loan. From 2001 to December 2005, Page wrote a total of 48 monthly checks to Regions Bank on Dalton Point's checking account, each one for either $23,889.86 or $23,989.86 and presented them to one of twenty different Regions Bank tellers. The teller then gave Page a cashiers check for $23,089.86, the amount due

on Dalton Point's loan, and either cash or a second cashiers check for the remaining $800 or $900. Page used the first check to make the payment on Dalton Point's loan and usually used the second cashiers check to make the monthly payment on her personal loan. Dalton Point discovered in 2006 that Page was using its funds to pay her loan and sought repayment of that money from the bank. The bank declined to pay because Page was an authorized signatory on the account.

Dalton Point filed suit seeking $66,627.75 and attorney fees. The bank responded that, besides Page being a signatory on the account, Dalton Point's Certificate of Resolution specifically gave the bank permission to take the actions it took. Dalton Point moved for summary judgment, attaching the affidavit of limited partner Ronald Ralston in which he stated that neither he nor the company ever gave Page permission to pay her personal loan from the company funds. Regions Bank also filed a motion for summary judgment, introducing the Certificate of Resolution, its vice president's affidavit, and numerous business records, including copies of the checks and monthly statements. The trial court granted the bank's motion. It held that Dalton Point's claims were barred by the express language of its Certificate of Resolution and the signature card, and also by the provisions of OCGA § 11-4-406, which addresses the timing of a bank customer's duty to discover and report unauthorized signatures or alterations.

1. Dalton Point contends that the trial court erred in ruling that the Certificate of Resolution barred its claim, arguing that the bank took the checks subject to the company's claim to the proceeds under OCGA § 11-3-306[1] because it was not a "holder in due course" as defined in OCGA § 11-3-302. Subsection (a) of that statute provides that the holder of an instrument is holding "in due course" if: (1) the instrument is not apparently forged, altered, irregular, or incomplete "as to call into question its authenticity," and (2) the holder took the instrument for value; in good faith; and without notice that the instrument was overdue, dishonored, contained an unauthorized signature, was subject to claims as set forth in OCGA § 11-3-306, or was subject to defenses or recoupment under OCGA § 11-3-305 (a) (infancy, duress, fraud, bankruptcy). OCGA § 11-3-302 (a).

---

[1] A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

Dalton Point argues that the bank was not a holder in due course because the resolution only authorized the bank to honor checks drawn, endorsed or payable to a signatory while these checks were payable to the bank, which knew that a portion of each check was being used for Page's personal benefit. Reviewing the resolution as whole, however, it instructs the bank to honor all checks drawn on the company's account bearing Page's signature even if the check is payable to Page or is given to pay her personal loan. Nothing in the record establishes an issue regarding whether the bank is a holder in due course. The checks were not altered or irregular on their face and nothing shows that Regions Bank acted in bad faith, or that it acted knowing that the checks were overdue, dishonored, or contained an unauthorized signature. OCGA § 11-3-302. Therefore the bank was a holder in due course.

Dalton Point also contends that the bank should have realized that Page did not have the authority to take the actions she took. While the resolution purports to permit this action, the company argues, it is unenforceable because it impermissibly relieves the bank of its duty to act in good faith and exercise due care when handling its account, in violation of OCGA § 11-1-102 (3). That statute provides:

> [P]rovisions of this title may be varied by agreement, . . . except that the obligations of good faith, diligence, reasonableness, and care prescribed by this title may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

The corporate resolution at issue here does not disclaim the bank's obligations of good faith; it simply provides the framework within which the bank was allowed to operate. "(A)n account agreement is controlling unless it is manifestly unreasonable. [Cit.]" *Freese v. Regions Bank*, 284 Ga. App. 717, 721 (644 SE2d 549) (2007). The resolution in this case is not manifestly unreasonable. It does not give the signatories global permission to take any action whatsoever; it provided that the signatories were permitted to take certain specific actions and authorized the bank to honor a check "presented for cash or for credit to the account of [a signatory] . . . or in payment of an individual obligation of that person," which is exactly what Page did.

> To charge a bank with notice that a depositor is acting in violation of his trust so as to render it liable for the amount paid out on his check or order to one other than the bank

itself, the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the sole inference that a breach of trust is intended. Simple neglect to inquire about circumstances which ought to have excited attention is not enough, just as it is not enough to prove a want of good faith in purchasing negotiable paper. Commercial transactions are not put within the strict fetters of constructive notice.

(Citations, punctuation and emphasis omitted.) *Bank South v. Grand Lodge &c.*, 174 Ga. App. 777, 781-782 (2) (331 SE2d 629) (1985). "[Page's] actions did not contravene the authority granted to her by the corporate resolution; therefore, whether her actions violated [Dalton Point's] internal policies only reflects whether she abused her authority, not whether she lacked authority." *Atlanta Sand & Supply Co. v. Citizens Bank*, 276 Ga. App. 149, 153 (1) (622 SE2d 484) (2005).

2. Dalton Point argues that the notification procedures in OCGA § 11-4-406 do not apply here because the statute only requires notice of forged or altered checks, and these checks were neither. This argument is moot in light of our holding in Division 1.

3. Dalton Point did not raise its claim for money had and received until after the trial court granted summary judgment to Regions Bank, and thus has waived its right to make that argument on appeal. *ESI, Inc. v. WestPoint Stevens*, 254 Ga. App. 332, 334-335 (5) (562 SE2d 198) (2002).

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 10, 2007.

*Avrett, Ponder & Withrock, Robert M. Withrock*, for appellant.
*Womble, Carlyle, Sandridge & Rice, Adam S. Katz*, for appellee.