**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 9, 2019**

# In the Court of Appeals of Georgia

A19A1262. TIMMONS et al. v. SUNTRUST BANK.                    DO-044

DOYLE, Presiding Judge.

Jean C. Timmons and Lauren L. Timmons ("the Plaintiffs") purchased a vehicle, entering into a loan contract with Master Buick GMC ("the Dealer"); the loan was then assigned to SunTrust Bank ("the Bank"). The Plaintiffs sued the Dealer and the Bank, seeking to revoke acceptance of the vehicle and alleging claims including violation of the Georgia Fair Business Practices Act ("GFBPA") and breach of various warranties.[1] The Bank moved for summary judgment, arguing that that it was a holder in due course of a note pursuant to OCGA § 11-3-302 and that the Plaintiffs' allegations did not meet any of the available defenses set forth in OCGA § 11-3-305.

---

[1] The Plaintiffs' claims against the dealer are not at issue in this appeal.

The trial court granted the motion, and the Plaintiffs appeal. For the following reasons, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that on July 9, 2015, the Plaintiffs purchased a 2015 GMC Sierra from the Dealer. On that day, the Affidavit of Sale was signed by the Plaintiffs and a representative of the Dealer; it lists identifying information about the Sierra, including the 6,738-mile odometer reading, and states that "the above described vehicle is free of all liens and encumbr[a]nces in the buyer's name except: SUNTRUST BANK." The "Customer Order" document, also dated July 9, 2015, identifies the Sierra and the vehicle that the Plaintiffs traded to the Dealer, details the line items of the transaction, including purchase price, trade allowance, etc., and states: "LIEN TO SUNTRUST BANK." A third document ("the Contract"), which

---

[2] (Punctuation omitted.) *L.D.F. Family Farm v. Charterbank*, 326 Ga. App. 361 (756 SE2d 593) (2014). See also OCGA § 9-11-56 (c).

identifies the Plaintiffs as co-buyers and the Dealer as "Creditor-Seller," contains Federal Truth In-Lending Disclosures specifying the annual percentage rate, the finance charge, the total amount financed, and details regarding the monthly payments, including amount, due date, and number. In the Contract, the Plaintiffs agreed "to pay the Creditor-Seller" the amount financed and the finance charge pursuant to the payment schedule listed. The Contract provides that "[t]he Seller may assign this Contract," which "contains the entire agreement between you and us relating to this contract." It also states:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

In March 2017, the Plaintiffs sued GM Motors, LLC, the Dealer, and the Bank, seeking to revoke acceptance of the vehicle and alleging various claims including breach of warranty and breach of the GFBPA, contending that the truck sold as "new"

3

had collision damage that was unrepaired.[3] In the complaint, the Plaintiffs alleged that their

> truck is financed by [the] Bank and that financing was arranged through [the Dealer]. As a result[, the Bank] is not a holder in due course and is subject to any defenses that the Plaintiffs have against [the Dealer]. As a result[,] the Plaintiffs owe little if anything to [the Bank]. The note should be cancelled as to the Plaintiffs.[4]

The Plaintiffs reiterated such claims against the Bank in a subsequent amended complaint. In their answers to the initial and amended complaints, the Bank "admit[ted] that it financed the purchase of the Plaintiffs' vehicle[, but] denie[d] the remaining allegations. . . ."

The Bank moved for summary judgment on the ground that it is a holder in due course of Plaintiff's "financial note" for the vehicle. The trial court granted the motion, concluding that the Bank entered into a loan agreement with the Plaintiffs and that the Bank "was assigned the financing for the subject vehicle, via a note and

---

[3] The Plaintiffs contend that the truck "was sold as a new truck even though it had 6738 miles on the odometer because the service manager was using it as his personal truck."

[4] In support of this allegation against the Bank, the Plaintiffs refer to Exhibit B, which is the first page of the TIL statement.

financial agreement in which financing terms were agreed upon and signed by [the] Plaintiffs and [the Dealer]"; the court cited only the complaint and the single-paged Contract as support for this conclusion. The court then concluded that the Bank "is a holder in due course of the financial note for the subject vehicle, and [the] Plaintiffs' allegations do not meet any of the available defenses under Georgia law. Therefore, [the Bank] has the right to enforce the terms of the vehicle note." This appeal followed.

The Plaintiffs contend that the trial court erred by granting summary judgment to the Bank based on its conclusion that the Bank was a holder in due course. We agree.

"'Holder in due course' status gives the holder of an instrument . . . the right to enforce it and to cut off certain defenses of the obligor under the instrument."[5] Under Georgia law,

> the holder of an instrument[6] is holding "in due course" if: (1) the instrument is not apparently forged, altered, irregular, or incomplete "as to call into question its authenticity," and (2) the holder took the instrument for value; in good faith; and without notice that the

---

[5] *Jenkins v. Wachovia Bank, Nat. Assn.*, 309 Ga. App. 562, 564 (1) (711 SE2d 80) (2011), citing OCGA § 11-3-305 (b) and official comment 2 thereunder; "Proof of Fraud in the Making of Commercial Paper and the Resulting Consequences," by Thomas M. Geisler, Jr., 93 Am. Jur. Proof of Facts 3d 141 §11 (except for certain "real defenses," an obligor's possible defenses are extinguished if the holder is one "in due course"). See also OCGA § 11-3-306 ("A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.").

[6] Pursuant to OCGA § 11-3-104 (b), an "[i]nstrument" is "a negotiable instrument." A "negotiable instrument" is defined as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) Is payable on demand or at a definite time; and (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain: (i) An undertaking or power to give, maintain, or protect collateral to secure payment; (ii) An authorization or power to the holder to confess judgment or realize on or dispose of collateral; or (iii) A waiver of the benefit of any law intended for the advantage or protection of an obligor. OCGA § 11-3-104 (a).

6

instrument was overdue, dishonored, contained an unauthorized signature, was subject to claims as set forth in OCGA § 11-3-306, or was subject to defenses or recoupment under OCGA § 11-3-305 (a) (infancy, duress, fraud, bankruptcy).[7]

OCGA § 11-3-106 (d), however, provides:

*If a promise* or order *at the time it is issued or first comes into possession of a holder contains a statement*, required by applicable statutory or administrative law, *to the effect that the rights of a holder or transferee are subject to claims or defenses that the issuer could assert against the original payee*, the promise or order is not thereby made conditional for the purposes of subsection (a) of Code Section 11-3-104; but, if the promise or order is an instrument, *there cannot be a holder in due course* of the instrument.[8]

Here, assuming that the Contract, which the parties agree was thereafter assigned to the Bank, was a negotiable instrument, the first page explicitly states that any holder of the Contract is subject to all claims and defenses that the Buyers could assert. Thus, pursuant to OCGA § 11-3-106 (d), the Bank is not a holder in due

---

[7] *Dalton Point, L.P. v. Regions Bank, Inc.*, 287 Ga. App. 468, 470 (1) (651 SE2d 549) (2007). See also OCGA § 11-3-302 (a).

[8] (Emphasis supplied).

7

course, and the trial court erred by granting summary judgment to the Bank on this basis.

The Bank argues that it is entitled to summary judgment on the Plaintiffs's claims even if it is not a holder in due course because the record is devoid of evidence that would permit the Plaintiffs to void the Contract. But neither the parties nor the trial court have engaged (either in the trial court or on appeal) in any meaningful argument regarding defenses that the Plaintiffs might have against the Bank's right to enforce the Contract, and the evidence submitted by the Plaintiffs, including Lauren Timmons's deposition testimony, creates genuine issues of material fact that preclude summary judgment to the Bank.

*Judgment reversed. Coomer and Markle, JJ., concur.*